# Connie Ella Fenoff v. William Clyde Fenoff

[578 A.2d 119]

No. 89-334

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed June 15, 1990

*John Morale*, Wells River, for Plaintiff-Appellant.

**Allen, C.J.** Plaintiff was awarded custody of the parties' son in a 1985 decree of the Orange Superior Court and appeals an order of that court enforcing defendant's visitation rights. We affirm.

The 1985 decree provided as follows:

> 11) The care, custody and control of the minor child of the parties, to wit, Roy Scott Fenoff, is decreed to the Plaintiff subject, however, to the rights of the Defendant to visit and have the child with him every other weekend from 6:00 P.M. Friday to 6:00 P.M. Sunday, and also the right to have the minor child with him at least two weeks during the summer vacation. Both parties shall have the right to take the minor child with them to New Hampshire for shopping and visits with relatives.

Visitations never occurred as contemplated in the 1985 decree, and defendant filed a motion to enforce his rights in October, 1988.

At the hearing on the motion, the trial court found that the child, who was nine when the 1985 decree was entered, refused to join his father for the prescribed visitations, even though defendant attempted visitations six times in that year. Nevertheless, Roy still "held his father in positive regard" as late as early 1985. After the child's repeated refusal to visit with his father, defendant stopped his attempts in order to give his son time to change his mind. Defendant attempted to see his son three times in 1988, but plaintiff did not allow him into her home, though there were meetings on the front steps which the court found were not satisfactory.

The court made specific findings about Roy Fenoff's state of mind in refusing to visit with his father, noting that he "is suffering a great deal of pain and anger over issues of the divorce, divided loyalties, and the role of his father in his life." The court found that Roy's reasons for not visiting his father had to do with his "early recollection of treatment of his mother and dog

by his father during the marriage, and certain behaviors and eccentricities of his father of which he disapproves." The court also found that the son's "animosity toward his father has steadily increased, to the point that he professes hatred of Mr. Fenoff." Roy, according to the court, "seems to harbor the unrealistic notion that if he steadfastly refuses to visit with his father, Mr. Fenoff will somehow disappear as a factor in his life."

The court ordered that visitation take place at a community mental health facility in the presence of a counsellor "with whom Roy has established a therapeutic relationship." The court allowed the counsellor to set the date when the child "is emotionally capable of dealing with this visit." The court directed plaintiff to arrange previsitation counseling "to assist him in dealing with his anger and pain regarding his parents' divorce, and to assist him in developing an adequate relationship with his father." Defendant was ordered to meet with his son's counsellor. Plaintiff was ordered to require her son to comply with the provisions of the order, to make the necessary appointments, and to arrange for transportation. The court invited the parties to seek further judicial intervention in the event either of the parties believed that the counseling was not effectuating the purposes of its order. Plaintiff appealed the order to this Court.

On appeal, plaintiff's first contention is that it is not in the best interests of the parties' son for him to resume visitation with his father. She cites cases from other jurisdictions holding that the welfare of the child is a more important consideration than visitation with the noncustodial parent. *Hagler v. Hagler*, 460 So. 2d 187, 189 (Ala. Civ. App. 1984); *Foster v. Foster*, 40 Ohio App. 2d 257, 266–67, 319 N.E.2d 395, 401 (1974). While we have not had occasion to weigh visitation rights as an interest in conflict with the best interests of the child, our cases are consistent with the results in the cases cited by plaintiff.

■ It is conceivable that a court could find visitation so inimical to the interests of a child that visitation would be greatly circumscribed or even denied. Indeed, our own cases provide that visitation may be denied upon a showing of good cause. See, e.g., *Cleverly v. Cleverly*, 147 Vt. 154, 157–58, 513 A.2d 612,

614 (1986). But in the present case the trial court heard the evidence on the impact of lack of visitation, including detailed testimony about the possible reasons why the parties' son is so averse to meeting with his father. It found that Roy's feelings were damaging and destructive. That testimony undoubtedly was the basis for the court's careful and gradual approach to facilitating visitation. In the end, the court found that visitation would be in Roy's best long-term interest despite his present animosity toward his father.

Plaintiff offers a different view of the evidence presented but does not indicate why the trial judge's contrary findings were in error. Findings of fact can be overturned only if they are clearly erroneous. *McCormick v. McCormick*, 150 Vt. 431, 434, 553 A.2d 1098, 1101 (1988); *Sutton v. Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987). In the present case the essential facts were not contested. The court clearly set forth in its findings the shortcomings of the parties and the vulnerability of their child. The court's decision was not based upon one party's version of reality over the other's. A trial court is granted a large degree of discretion in drawing conclusions from its findings in matrimonial matters, and that discretion will be questioned only if it is abused. *Costello v. Costello*, 142 Vt. 124, 126, 453 A.2d 1107, 1108 (1982); *Ohland v. Ohland*, 141 Vt. 34, 39, 442 A.2d 1306, 1309 (1982). There is no sign of abuse in the present case; on the contrary, the decree reflects much care and sensitivity to the parties' positions and the needs of their son. The tragedy of a child and a parent separated by bitterness and hate is a sad and difficult backdrop for any judicial determination. It is hard to conceive of any single outcome that would be accepted by all as ideal or perfect, but we do not demand the ideal or perfect. In this case, the judge showed great sensitivity to Roy's feelings and was careful not to label them right or wrong. She acknowledged the history of alienation between father and son and made the reasonable surmise that in time the importance of the father might reemerge in the

son's life. Her order preserves that possibility, and comes with no other requirement than that it be followed in good faith.*

■■ Plaintiff also argues that the trial court was powerless to condition visitation on a parent's agreement to seek psychotherapy, citing numerous precedents from other jurisdictions, including *Schneider v. Schneider*, 127 A.D.2d 491, 495, 511 N.Y.S.2d 847, 850–51, *aff'd*, 70 N.Y.2d 739, 514 N.E.2d 382, 519 N.Y.S.2d 962 (1987). Whatever the wisdom of these holdings, they do not apply to the present case. The direction to meet with Roy Fenoff's counsellor was aimed at defendant, not plaintiff, and she may not assert his right. See *Helm v. Helm*, 139 Vt. 225, 226–27, 424 A.2d 1081, 1082 (1981) (former husband lacked sufficient interest to intervene in annulment action between former wife and second husband); *Dailey v. Dailey*, 11 Ohio App. 3d 121, 123, 463 N.E.2d 427, 430 (1983) (husband in divorce action did not have standing to object to failure of trial court to appoint guardian ad litem for wife). Further, the order directs defendant only to meet with Roy's counsellor "to examine his own behaviors in the past as they affected Roy, and develop guidelines for behavior for future contacts with Roy." To equate such direction with a requirement for psychological therapy or psychiatric treatment, as plaintiff argues, overstates the case.

■ Finally, plaintiff complains that the court erred in allowing her son's counsellor to set the date for the first visitation. This Court is wary of decrees that assign responsibilities in a manner inconsistent with governing law. See *Cameron v. Cameron*, 137 Vt. 12, 16, 398 A.2d 294, 296 (1979) (court not authorized to require the Department of Social and Rehabilitation Services to supervise custody award in divorce case, since that power is limited to juvenile proceedings in district court). However, the duty assigned to Roy Fenoff's counsellor is limited to indicating the date when visitation is to begin, not to deciding *if* visitation should occur. In the event the counsellor cannot, or

---

* In asserting her own good faith, plaintiff argues that she cannot be held in contempt for failing to compel visitation in the past. Plaintiff was not held in contempt or threatened with contempt by the trial court; consequently, the issue is not now before us.

does not, perform this function in accordance with the decree, defendant may file an appropriate motion to give the trial court the opportunity to reconsider the order in light of the most current evidence.

*Affirmed.*