2012 VT 101

## Glenn Engel, III v. Holly Engel

[71 A.3d 1124]

No. 11-118

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed November 30, 2012

*Maureen A. Martin*, Hartland, for Plaintiff-Appellee.

*Charles S. Martin* of *Charles S. Martin & Associates, P.C.,* Barre, for Defendant-Appellant.

*Tavian M. Mayer* of *Mayer & Mayer,* South Royalton, for the Children.

¶ 1. **Dooley, J.** Mother appeals from a final divorce order granting father parental rights and responsibilities for the parties' two children and giving mother parent-child contact in stages beginning with supervised contact with progression through the stages determined by the children's medical and mental health providers. Mother argues that the order impermissibly delegates the court's statutory responsibility to determine parent-child contact and parental rights and responsibilities, that the court effectively terminated her parental rights without a finding of parental unfitness supported by clear and convincing evidence, and that the court's findings are inadequate to support the contact provisions. We agree that the order improperly delegates authority over parent-child contact to third parties, and reverse and remand.

¶ 2. The underlying facts are largely uncontested. The parties were married for ten years and have two children together. The parties' marriage suffered from various problems, including mounting financial pressures, significant consumer debt, clutter in the home that "reached alarming levels," verbal conflict, and at least one incident of physical abuse. At one point during the marriage, mother accused father of sexually abusing the children, and scheduled an appointment with the boys' pediatrician, who found no reason to conclude that they were being sexually abused. After an incident in February 2008 in which mother absconded from the home with the children for six days without contact, father filed a complaint for divorce.

¶ 3. Following the parties' separation, the family court issued a temporary order granting the parties' stipulation for the maternal grandparents to take temporary legal and physical rights and responsibilities for the children, subject to supervised parental contact. Because the children had a history of displaying "defiant and challenging behaviors," the court instructed the grandparents to choose therapists for them. The trial court also directed the parents to seek individual therapy and parent education.

¶ 4. During mother's visitation with the children, her behavior was often inappropriate. After "a number of tense interchanges"

between mother and the grandparents, the grandparents sent a letter to mother's counsel on May 8, 2008 stating that mother was no longer welcome to visit the boys in their home. Subsequently, mother began having supervised visits with the children at a nonprofit family center. Over time, however, the family center staff developed similar concerns about mother's behaviors, including mother's interrogation of the boys about their father and their prescription medications despite the children's clear discomfort. In addition, mother engaged the center's staff in long conversations about her private matters and requested to use the center as a location for retrieving property from the marital home. Mother also made numerous lengthy telephone calls to the family center director and even arrived at the home of the center's director unannounced to discuss her issues.

¶ 5. Throughout the summer of 2008, the children's therapist and pediatrician maintained communication with each other. They discussed the boys' progress, and determined it would be helpful to form a "treatment team" to better coordinate services for the boys and their family. The treatment team comprised the children's therapist, pediatrician, and guardian ad litem.

¶ 6. In September 2008, upon father's motion, the court issued a temporary order awarding father legal and physical rights and responsibilities and continuing mother's supervised contact with the children at the family center twice a week. The court also ordered that changes in the visitation arrangements could be implemented by recommendation of the treatment team. In late September 2008, due to mother's inability to follow the rules, the center suspended mother's access to visitation at that site. As a consequence, mother did not have visits for three months.

¶ 7. After agreeing to various terms relating to boundary issues, mother was able to briefly resume her visitation at the center. In January 2009, however, mother questioned one of the boys in a manner that clearly bothered the child. She continued to ask what medications the child was taking. The boy kept saying, "No, I don't want to talk about that." Mother also asked the child to show her a rash on his penis, and the child became upset and embarrassed. The trial court found that mother was using the visits to "interrogate the boys in a search for evidence." Following these incidents, the director of the family center notified the parties on January 16, 2009 that the center could no longer provide therapeutic supervision to repair the relationship between

the children and their mother. The children's guardian ad litem sent a letter soon thereafter with information about three other service providers that might be able to assist the family. Subsequently, the treatment team exercised its authority pursuant to the amended temporary order and suspended mother's visitation until an appropriate provider of "therapeutic supervised visitation" could be found.

¶ 8. The parties had trouble finding a new visitation supervisor and "resources proved scarce." Mother contacted the three centers suggested in the letter without any success. In January 2010, a therapist expressed interest in working with mother, and the treatment team was convened to meet with parents, their counsel, and the therapist, but mother did not attend the meeting, citing car trouble. She did not seek to have the meeting rescheduled.

¶ 9. Mother filed motions seeking parent-child contact in September 2009, June 2010, and December 2010, and the family court deferred ruling on these motions pending a final hearing and order. As of the date of the final order in February 2011, mother had not had any in-person contact with the boys since January 2009, although she had spoken with the boys over the phone and played computer games with them.

¶ 10. In the interim, the boys progressed successfully in therapy. They showed reduced signs of agitation, and were taken off medication. Accordingly, their therapist "fully supports father maintaining primary care of the children," though he is also "adamant the boys need to see their mother." The boys' pediatrician also noticed improvement in their physical and emotional health, and echoed the therapist's belief that a treatment team was still needed and that resumed visitation with mother would require "thoughtful oversight."

¶ 11. After an extended trial from 2009 to 2010, in which numerous individuals testified — including mother, father, the boys' pediatrician and therapist, the family center director, and the boys' maternal grandparents — the court granted the parties a divorce and awarded father sole legal and physical rights and responsibilities. The court provided mother with contact in three phases. Initially, she was granted short supervised visits, eventually increasing to longer, unsupervised overnight contact.[1] The

---

[1] In its order, the court acknowledged that it likely had contributed to mother not being able to visit with her children between January 2009 and February 2011. To

court explained that the visit supervisor could suspend a visit "[i]f the children become anxious or upset." The court also designated that "[t]he determination to advance from one phase to another will be made by the children's pediatrician . . . and therapist . . . consistent with the physical, emotional and psychological health of the children."

¶ 12. On appeal, mother argues that the court lacked authority to delegate responsibility for determining her parent-child contact to the children's treatment providers.[2] Father responds that the court did not improperly delegate its authority because it retained the power to override the team's recommendations. The children through their lawyer join father's brief and request that the family court's decision be affirmed.

■ ■ ¶ 13. The issue of whether the court's order here impermissibly delegated its authority to determine custody matters to the treatment team is a legal question that we review de novo. *Mitchinson v. Mitchinson*, 173 Vt. 483, 484, 788 A.2d 23, 24 (2001) (mem.). In a custody dispute, it is the court's responsibility to decide which parent will assume legal and physical parental rights, and to set forth parent-child contact for the noncustodial parent. 15 V.S.A. § 665(a) (entrusting court with authority to "make an order concerning parental rights and responsibilities" of minor children); *id.* § 664(1) (defining parental rights and responsibilities to include "parent child contact"). The court's determination is guided by the best interests of the children. *Id.* § 665(b) (setting forth factors to be considered). The public policy expressed by the Legislature is that "it is in the best interests of their minor child to have the opportunity for maximum continuing physical and emotional contact with both parents, unless direct physical harm or significant emotional harm to the child . . . is

---

correct this problem, the court gave the treatment team approximately one month to identify a neutral, trained therapist willing to undertake the supervisor role. In the absence of a recommendation from the treatment team, or other agreement of the parties, the court authorized the maternal grandfather or paternal grandmother to supervise visits between mother and the children.

[2] Mother makes two additional arguments on appeal. Mother claims that the court's order contains an improper automatic-change provision contrary to our holding in *Knutsen v. Cegalis*, 2009 VT 110, ¶ 10, 187 Vt. 99, 989 A.2d 1010. Mother also argues that the trial court merely quoted the children's therapist and pediatrician, but failed to make actual findings to support the parent-child contact order. Given our decision to strike the parent-child contact provision of the final order and to remand the matter, we do not reach these arguments.

likely to result from such contact." *Id.* § 650. In keeping with this policy, we have held that a parent has a right to contact with her children, unless the court finds by clear and convincing evidence that visitation would be detrimental to the child. *DeSantis v. Pegues*, 2011 VT 114, ¶ 35, 190 Vt. 457, 35 A.3d 152. In this case, there is no finding, and none can be made on this record, that total denial of contact with mother is warranted and in the children's best interest.[3]

¶ 14. The court was thus bound to fulfill its statutory role by crafting a contact schedule and could not delegate this task to another agency or individual. See *Cameron v. Cameron*, 137 Vt. 12, 16, 398 A.2d 294, 296 (1979) (holding that court's order delegating to social services agency task of monitoring custody award was beyond court's authority because such delegation was not authorized by statute). In limited cases, we have recognized that the court may allow experts to make ministerial decisions regarding the mechanics of visitation. See *LaMoria v. LaMoria*, 171 Vt. 559, 561, 762 A.2d 1233, 1235 (2000) (mem.) (concluding there was no improper delegation where therapist's role was to set time for visitation); *Fenoff v. Fenoff*, 154 Vt. 450, 454, 578 A.2d 119, 121 (1990) (holding court could allow child's counselor to set date of first visitation because counselor was limited "to indicating the date when visitation is to begin, not to deciding *if* visitation should occur"). We have, however, consistently emphasized the court's role of safeguarding the interests of parents and the best interests of children by limiting custody determinations to court decisions based on current factual findings. This is true for both the initial determination of parental rights and every subsequent stage of modification. See *Knutsen*, 2009 VT 110, ¶ 10 (reversing order with automatic change provision because any change in custody should be based on real-time analysis of child's best interests). Thus, even in a case where the parties agree "to follow the custody recommendation of a jointly selected mental health expert, the court cannot be bound by that agreement or by the

---

[3] There is no merit to mother's argument that the court's order effectively gives the visitation supervisor authority to terminate her parental rights without a finding based on clear and convincing evidence that she is an unfit parent. This argument stems from the provision in the order stating that "[i]f the children become anxious or upset, [the visitation supervisor] will suspend the visit." This provision merely allows the visit supervisor to suspend an individual visit and does not allow the visit supervisor to terminate mother's contact entirely.

expert's recommendation when the evidence demonstrates that the best interests of the child requires a different result." *Luce v. Cushing*, 2004 VT 117, ¶ 10, 177 Vt. 600, 868 A.2d 672 (mem.).

¶ 15. An exploration of cases from other jurisdictions provides some helpful general principles regarding the proper limits of delegation. These cases generally fall into two categories — cases where the trial court delegates to the custodial parent the authority to determine the noncustodial parent's contact, and cases where the trial court delegates to a counselor or other professional the authority to determine the noncustodial parent's contact. Compare *Marquette v. Marquette*, 2006 ND 154, ¶ 9, 719 N.W.2d 321 (court delegates to mother authority to decide manner and timing of visitation), with *Paulson v. Paulson*, 2005 ND 72, ¶ 21, 694 N.W.2d 681 (mother's visitation with child set by therapeutic psychologist). This case falls into the latter category involving a neutral decisionmaker. In such cases, other jurisdictions tend to invalidate delegations that give a third-party absolute, unconditional discretion over the noncustodial parent's right of contact. See, e.g., *Larocka v. Larocka*, 43 So. 3d 911, 912-13 (Fla. Dist. Ct. App. 2010) (improper delegation where court provided that "contact and visitation between Mother and her daughter will be established by a counselor"); *Wrightson v. Wrightson*, 467 S.E.2d 578, 580-81 (Ga. 1996) (improper delegation where therapist had power to suspend or modify visitation); *Shapiro v. Shapiro*, 458 A.2d 1257, 1259, 1261 (Md. Ct. Spec. App. 1983) (improper delegation where visitation denied until doctor recommended it, and then only on doctor's terms and conditions); *Deacon v. Deacon*, 297 N.W.2d 757, 762 (Neb. 1980) (improper delegation where court placed in psychologist authority to "effectively determine visitation, and to control the extent and time of such visitation"), *disapproved of on other grounds by Gibilisco v. Gibilisco*, 637 N.W.2d 898 (Neb. 2002); *Peters v. Pennington*, 707 S.E.2d 724, 738 (N.C. Ct. App. 2011) (noting that "an order is less likely to be sustained as judicially-imposed structure decreases and the decision-making party's unfettered discretion increases"); *Paulson*, 2005 ND 72, ¶ 21 (improper delegation where doctor was allowed to set visitation schedule "carte blanche"); *Stefan v. Stefan*, 465 S.E.2d 734, 736 (S.C. Ct. App. 1995) (per curiam) (improper delegation where visitation would not resume without guardian ad litem approval).

■ ¶ 16. On the other hand, courts generally allow professionals to make recommendations or decide details about contact as long as the court retains authority over the contact decision. See, e.g., *Hamel v. Hamel*, 489 A.2d 471, 474-75 (D.C. 1985) (upholding order where court required noncustodial parent to meet with doctor so doctor could make recommendation to court, and court retained authority to determine terms and conditions of visitation); *Young v. Young*, 370 N.W.2d 57, 65-66 (Minn. Ct. App. 1985) (allowing doctor to recommend when noncustodial parent would be allowed to resume visitation, but noting that "the court has a duty to exercise its own independent judgment"); *Peters*, 707 S.E.2d at 738 (concluding permissible delegation where court vested "neutral decision makers, who are in the best position to evaluate the mental condition of [mother] and the children, with the authority to craft the details of an elastic treatment and visitation program"). Additionally, some courts have focused on the need for supervision in determining whether a delegation is justified where the child needs extra protection and there is some element of abuse or neglect present. See *Wigginton v. Wigginton*, 2005 ND 31, ¶ 12, 692 N.W.2d 108 (upholding order giving custodial parent sole discretion to determine noncustodial parent's visitation because noncustodial parent presented danger to children and custodial parent encouraged children to have relationship with noncustodial parent).

■ ¶ 17. Here, the court's order impermissibly allows other individuals to make critical decisions regarding mother's contact with her children without court oversight. The order states that mother is to have contact in three phases. The first phase is supervised contact for two hours every week. At some undesignated point thereafter, mother may progress to unsupervised contact in two additional phases: first, overnight visits once a week and then alternating weekends and one evening a week. Her ability to move from one phase to another is determined "by [the treatment team] consistent with the physical, emotional and psychological health of the children."

■ ¶ 18. There are two main deficiencies in the delegation order. The first is allowing the treatment team unchecked authority to modify the type and frequency of mother's contact. Far from the "ministerial" tasks we have sanctioned in the past, see *LaMoria*, 171 Vt. at 561, 762 A.2d at 1235 (allowing therapist to

decide time for visitation), this delegation involves critical decisions, such as whether mother and the children are ready to proceed from limited supervised contact to unsupervised and overnight contact. These decisions are judicial. Thus, courts around the country agree that delegating this kind of decision is unlawful. See *Shapiro*, 458 A.2d at 1261-62 (holding that it was error for court to delegate to child's physician ability to decide terms and guidelines of visitation); *Stefan*, 465 S.E.2d at 736 (concluding family court erred in delegating responsibility to guardian to decide issues regarding visitation). As the Supreme Court of Nebraska stated, "placing in a psychologist the authority to effectively determine visitation, and to control the extent and time of such visitation, is not the intent of the law and is an unlawful delegation of the trial court's duty." *Deacon*, 297 N.W.2d at 762.

■ ¶ 19. The second related deficiency is that there are no specific, ascertainable standards governing the exercise of the treatment team's discretion. The court directed that increases in mother's contact must be made "consistent with the physical, emotional and psychological health of the children," but this standard is so broad and vague that it is no standard at all. As explained above, a delegation is not acceptable if there are no standards governing its exercise and that is the result here. See *Peters*, 707 S.E.2d at 738. Therefore, we reverse the parent-child contact portion of the trial court's final order, and remand the matter to the family division to design a new parent-child contact order consistent with the law expressed in this decision. Given the significant passage of time since the divorce hearing, on remand, the court should conduct an additional evidentiary hearing to assess the current best interests of the children. See *Knutsen*, 2009 VT 110, ¶¶ 16-17 (reversing custody order and remanding for court to reevaluate and construct comprehensive current order in child's best interests).

*Reversed and remanded for further proceedings consistent with this decision.*