CARROLL, J.
¶ 1. This case considers whether a trial court can modify parental rights and responsibilities when one parent is relocating if that issue is not expressly raised by motion and the sole motion before the court is the relocating parent's motion to modify parent-child contact. Katie Churchill (mother) appeals a trial court decision that transferred the right to choose the children's residence and school from her to Landon Bonk (father) and that reconfigured the parties' existing contact schedule, reducing her time with her children from approximately 65% to 20%. We hold that mother's motion to modify parent-child contact and father's motion to dismiss in response did not raise the issue of the parties' parental rights and responsibilities. Therefore, the trial court abused its discretion by issuing an order modifying parental rights and responsibilities. We further hold that the proceedings below support finding a sufficient change of circumstances to grant mother's motion to modify parent-child contact. Accordingly, we reverse and remand for the trial court to set a new parent-child contact schedule.
¶ 2. The parties divorced in August 2016. They have two children, born in July 2011 and May 2013. The parties resided in Enosburg during their marriage, and their oldest child attended school in the Enosburg district. Father remained in the marital residence after the divorce, while mother moved in with a friend in St. Albans. Both children continued to attend the same care and educational programs they attended prior to the divorce. The final divorce order, which was based on the parties' stipulation, provided that the parties would share physical and legal rights and responsibilities. The order and underlying stipulation further provided that the children's primary residence would be with mother and that they would attend school in the town where mother resided, with the sole exception that the children would not be placed in the St. Albans town or city schools. Mother retained the sole right to decide where the children would attend school.
¶ 3. The parties' divorce order also included a biweekly parent-child contact schedule. According to this schedule, in the first week father exercised parent-child contact from Wednesday after school until the beginning of school on Thursday and on Friday after school until late Sunday afternoon. In the second week, father exercised parent-child contact from Wednesday after school until the start of school on Friday. At all other times, the children were with mother. The parties shifted the schedule by agreement so that father exercised parent-child contact Thursday through Sunday in week one, and Tuesday and Wednesday in week two. This alteration did not change the number of overnights that either party had with the children.
*603 The trial court found that father had the children for five nights over two weeks, or 35.7% of overnights, under both the original agreement and the agreement as followed by the parties.
¶ 4. In December 2016, mother notified father that she intended to purchase a home in Proctor. Mother suggested altering the parent-child contact schedule to reduce midweek travel and transitions. Father's attorney subsequently sent mother's attorney a letter objecting to both mother's intended move and any change to the parties' current parent-child contact schedule. Mother purchased a home in Proctor in February 2017. The same month, she filed a motion to modify the parent-child contact schedule. Father filed a motion to dismiss mother's motion, arguing, in essence, that there was no change of circumstances to support altering the schedule because mother's move was avoidable, and, if mother's motion was denied, she would likely stay in Franklin County and any change to the parent-child contact schedule would be unnecessary. In this motion, father stated that he had "never consented to or approved of his children being moved away from Franklin County, the place where he lives and works; where the parties lived during the marriage; where the children have lived their whole lives; and where [mother] has lived her whole life."
¶ 5. The parties appeared before the trial court for a thirty-minute hearing in May 2017, at which they agreed upon an interim schedule that reduced midweek transitions and travel time for the children and allowed their oldest child to finish the school year in Enosburg. The parties returned to the court for a two-hour hearing in June. During both the June hearing and a subsequent hearing in July, father's attorney argued that a proposed change in parent-child contact necessarily invoked a review of parental rights and responsibilities. To that end, she elicited testimony regarding the best interests of the children for purposes of a parental rights and responsibilities analysis. Mother's attorney repeatedly objected on the ground that the matter before the court was mother's motion to modify parent-child contact and father's opposing motion to dismiss-neither party had filed a motion to modify parental rights and responsibilities. Mother's attorney further stated that the reason for the hearing was to determine an amendment to the parties' current parent-child contact schedule that would enable father to retain the same percentage of time with the children while also minimizing travel and transitions for the children. The court did not determine the scope of the issues before it at that time, though later in the same hearing and following another objection, the court stated that it would reserve on the issue of scope, allow the testimony to continue, and make a determination at the end regarding the facts and factors to be considered. Mother's attorney continued to object to testimony directed at the parental rights and responsibilities analysis rather than the modification of parent-child contact. The trial court overruled these objections. Mother's attorney did elicit testimony from mother about the impact a change of physical responsibility would have on the children.
¶ 6. Both parties submitted proposed findings of fact and conclusions of law after the July hearing. Father's proposed conclusions of law included two suggested alternatives. First, the court could deny mother's motion to modify parent-child contact in reliance on mother's testimony that she would remain in Franklin County if the court denied her motion.[1] Second, *604 father argued, the court could modify the parent-child contact schedule so that the children would live primarily with him and mother would exercise parent-child contact and also change the divorce order's provision giving mother sole right to choose the children's residence and school. Father argued that the evidence presented included consideration of parental rights and responsibilities, not simply parent-child contact, and that under Vermont Rule of Civil Procedure 15(b) the court should consider father's initial motion to dismiss amended to conform to the evidence presented and to raise the issue of parental rights and responsibilities. Mother's proposed findings of fact and conclusions of law asked the court to modify the current parent-child contact schedule such that father retained the same percentage of time with the children, but his parent-child contact was not scheduled midweek.
¶ 7. The trial court issued a decision that modified parental rights and responsibilities, deciding initially that the court was not limited to considering a parent-child contact modification only. Instead, it could consider whether there had been a real, substantial, unanticipated change in circumstances and whether the best interests of the children required a change in the underlying order's disposition of parental rights and responsibilities. The court then found a real, substantial, and unanticipated change of circumstances and engaged in a best interest analysis under 15 V.S.A. § 665. The court subsequently transferred the portion of physical rights and responsibilities that allowed mother to choose the children's primary residence and to select their school to father but otherwise retained the parties' shared physical and legal rights and responsibilities. The court granted mother parent-child contact three weekends of each month from early Friday evening to late Sunday afternoon, with school vacations shared between the parties. This appeal followed.
¶ 8. In general, "[t]he family court has broad discretion both in assessing whether there has been a change in circumstances and in evaluating what parenting arrangement is in a child's best interests." Quinones v. Bouffard, 2017 VT 103, ¶ 10, --- Vt. ----, 179 A.3d 173 (quotation omitted). This Court will uphold the lower court's factual findings unless, "viewing the record in the light most favorable to the prevailing party and excluding the effect of modifying evidence, there is no credible evidence to support the findings." Id. (quotation omitted). We will also uphold the court's legal conclusions if those conclusions are supported by the court's findings of fact. Id.
¶ 9. The family court concluded that a real, substantial, and unanticipated change of circumstances had occurred. See 15 V.S.A. § 668(a) ("[U]pon a showing of real, substantial and unanticipated change of circumstances, the court may annul, vary, or modify an order made under this subchapter if it is in the best interests of the child ...."). The court found in this case that mother had purchased a home in Proctor, moved to that town, and was starting a business in Rutland. As a practical *605 matter, the court concluded that mother's move made it impossible for father to continue to exercise midweek parent-child contact. This conclusion is derived from two primary factors, neither of which is in dispute-mother's move was for an indefinite duration and the parties agreed that a two-and-a-half-hour drive separated their homes. Given these facts, we agree with the trial court that the parties' current parent-child contact schedule was no longer feasible. Mother's move to Proctor constitutes a real, substantial, and unanticipated change of circumstances for the purpose of her motion to modify parent-child contact.
¶ 10. But our agreement with the trial court on this point does not mean that we agree that the trial court could then consider modifying parental rights and responsibilities. The family court's decision on this point flowed from the court's legal conclusion that the parties' parental rights and responsibilities were at issue-that legal conclusion was erroneous.
¶ 11. As noted above, father argued that V.R.C.P. 15(b) would permit the court to amend his initial motion, which requested dismissal of mother's motion, to the effect that his motion could be read as expressly raising parental rights and responsibilities. The trial court did not refer to V.R.C.P. 15(b) in its decision, though the decision does note that father expressly requested a change in custody in his post-hearing proposed findings of fact and conclusions of law. The court also relied on an unpublished three-justice decision of this Court for the proposition that " '[t]he fact that father did not expressly ask for 'sole' or 'legal' rights and responsibilities [does] not divest the court of its discretion to award such rights and responsibilities to father, should the facts so warrant the change in the best interests of the children." See Zalot v. Bianchi, No. 2005-411, 2006 WL 5866285, at *1 (Vt. May 25, 2006) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo05-411.pdf. Decisions from a three-justice panel of this Court are not precedential and, therefore, Zalot cannot control the trial court's decision and we need not consider it. V.R.A.P. 33.1(d)(1) (explaining that except in narrow circumstances, none of which applies here, "[a]n unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent").[2]
¶ 12. Vermont Rule of Civil Procedure 15(b) provides that:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the *606 ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.
This Court has favored a liberal construction of this rule, permitting, for example, an amendment to the pleadings to add a new cause of action after the parties had filed motions for summary judgment. See LeClair v. LeClair, 2017 VT 34, ¶ 35, --- Vt. ----, 169 A.3d 743. But the plain language of the rule includes a defining limitation on this liberal construction-the issues to be added by amendment must be "tried by express or implied consent of the parties." V.R.C.P. 15(b). Thus, we have permitted amendment to the pleadings after the parties have filed motions for summary judgment only where the issue to be added was not only explored at length in each party's pretrial discovery, but also implicitly addressed in each party's motion for summary judgment. LeClair, 2017 VT 34, ¶¶ 31-33, 169 A.3d 743.
¶ 13. A party's objection to evidence or testimony on the ground that the evidence or testimony is unrelated to the issues in the pleadings is a strong indication that the party neither expressly nor impliedly consents to trial of that issue. See Molleur v. Leriche, 142 Vt. 620, 622, 458 A.2d 1139, 1140 (1983) (holding issue could not be included in jury charge because issue not expressly or impliedly tried by parties where party objected to issue's inclusion in charge). More importantly, "[i]f a party attempts to introduce evidence at trial regarding an issue not addressed in the pleadings, and the opposing party objects, the party seeking to admit the evidence must move for an amendment of the pleadings." Withington v. Derrick, 153 Vt. 598, 605, 572 A.2d 912, 915 (1990). But see Chase v. Bowen, 2008 VT 12, ¶ 20, 183 Vt. 187, 945 A.2d 901 (affirming decision reconfiguring physical and legal rights and responsibilities "because [mother's] own motion to modify [parental rights and responsibilities] put the custody and contact order, as well as her parenting ability, in issue"). According to the plain language of V.R.C.P. 15(b), upon objection to the inclusion of evidence on grounds that the evidence is beyond the issues in play, the party seeking to admit evidence must seek an amendment to the pleadings. The amendment shall be "freely" permitted unless the objecting party can demonstrate that the amendment would be prejudicial. V.R.C.P. 15(b).
¶ 14. As noted above, mother repeatedly objected to father's testimony related to changing the parties' parental rights and responsibilities disposition. For example, mother's attorney stated: "Had father filed a motion to modify rights and responsibilities, I agree that all of these issues would be on the table and we should be spending time going into all of these things, but there is no motion. It's merely a question about the modification of parent-child contact." The court declined to decide whether parental rights and responsibilities were at issue, but allowed testimony directed at that issue to continue and likewise continued to overrule mother's ongoing objections to this line of testimony. Under these circumstances and the clear direction of Rule 15(b), the appropriate course of action would have been for the family court to consider and decide whether parental rights and responsibilities were at issue when mother initially objected. Father should have moved at that time to amend his motion to dismiss to include a motion to modify parental *607 rights and responsibilities. Absent either an amendment or a clear decision from the court regarding parental rights and responsibilities, it was an abuse of discretion for the court to reach this issue in its final decision, based on only the after-the-fact request in father's proposed findings. See LeClair, 2017 VT 34, ¶ 27, 169 A.3d 743 ("We review denial of a motion to amend a pleading for abuse of discretion.").[3] The only issue properly before the court was mother's motion to modify parent-child contact.[4] As noted above, we find that mother has established the requisite change of circumstances and the court must now issue a modified schedule of parent-child contact given mother's relocation to Proctor.[5]
Reversed and remanded for the family court to set a new parent-child contact schedule.

It is not uncommon in some relocation cases for the opposing party to ask the relocating parent whether he or she will relocate if the court denies that party's motion to modify parent-child contact or parental rights and responsibilities. We note first that this question is speculative. But also, this is a very problematic question for a parent in this position. If the relocating parent answers this question in the affirmative, it invites an argument by the other parent that the relocating parent is willing to leave the children behind. If the relocating parent answers this question in the negative, he or she runs the risk of the court determining that there is no current controversy. Given our resolution of this case, we need not definitively address whether this question is permissible.

Indeed, Zalot v. Bianchi can be easily distinguished. In that relocation case, the trial court had before it both mother's motion to modify parent-child contact and father's motion to modify parental rights and responsibilities. Father's motion requested an unspecified modification of parental rights and responsibilities and the court eventually awarded him sole legal and physical rights and responsibilities. Mother argued that because father did not make a specific request for sole rights, the court was precluded from modifying the order in the manner it did. Id. at *1. We held that father's motion put the issue of parental rights and responsibilities properly before the court and that this provided adequate notice to mother that parental rights and responsibilities were at issue. Id. at *2-3. Unlike the circumstances here, the trial court had before it a properly filed motion to modify parental rights and responsibilities.

We agree with the dissent that if the parties shared all physical rights and responsibilities equally, a decision by mother to relocate would necessarily have invoked an examination of parental rights and responsibilities, since the parties would no longer be in a position to share undivided physical rights. See post, ¶ 24. However, here, mother held the specific, sole right to decide where the children would live with her and the schools they would attend. As a result, mother's relocation would not have altered any portion of physical rights and responsibilities awarded to father. As the dissent points out, citing Hawkes v. Spence, 2005 VT 57, ¶ 12, 178 Vt. 161, 878 A.2d 273, a change in parental rights and responsibilities is implicated when relocation significantly impairs either parent's ability to exercise responsibilities the parent had been exercising. Here, mother, not father, had exclusive authority to choose where the children resided and attended school. In addition, the parties' time with the children was not close to fifty percent.

Our decision in this case should not be construed as precluding the family court from consideration of future motions from either party.

Mother filed a motion to stay the family court's judgment just before this Court's consideration of this appeal. Because we have remanded for the court to set a new parent-child contact schedule that takes into account mother's relocation to Proctor, mother's motion is moot.