NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 2

No. 2019-149

| | |
|---|---|
| Jason C. Barrows | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Family Division |
| | |
| Jessica Easton | October Term, 2019 |

John R. Treadwell, J.

Sharon L. Annis of Buehler & Annis, PLC, Brattleboro, for Plaintiff-Appellant.

Jessica Easton, Pro Se, Brattleboro, Defendant-Appellee.


PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Burgess, J. (Ret.)[1] and
          Morris, Supr. J. (Ret.), Specially Assigned


¶ 1.     **ROBINSON, J.**  In this parentage case, father appeals an order purporting to grant him primary physical rights and responsibilities but granting mother parent-child contact amounting to 64% of parenting time. We conclude that this allocation of physical rights and responsibilities and parent-child contact is internally inconsistent, and remand for the trial court to amend its findings and order.

¶ 2.     Father filed this parentage action in July 2017, when the child was approximately six months old. Pursuant to the parties' stipulation, the court entered an interim order providing that parents would share legal rights and responsibilities, and assigning mother "full physical

---

[1] Justice Burgess was present for oral argument but has since recused himself.

parental rights and responsibilities." The stipulated order provided that father and child had parent-child contact every weekend from Friday to Sunday evening or, in alternate weeks, Friday to Monday morning. It provided that the child would be in day care at early education services from 8:30 a.m. to 3:00 p.m. five days per week. That general schedule remained in place throughout the trial court proceedings.

¶ 3.     In January 2019, following a contested hearing, the court issued a final order regarding parental rights and responsibilities and parent-child contact. The parents did not agree to share legal or physical parental rights and responsibilities, so the court was required to award parental rights and responsibilities "primarily or solely" to one parent. 15 V.S.A. § 665(a). The court found that both parents had a significant role in the child's life and that the child "has a strong and enduring bond with both his parents." The court concluded that most of the statutory factors guiding the best-interests analysis, including the "primary care provider" factor, did not favor either parent. See id. § 665(b). However, two factors—"[t]he ability and disposition of each parent to assure that the child receives adequate food, clothing, medical care, other material needs and a safe environment," and "the ability and disposition of each parent to meet the child's present and future developmental needs"—slightly favored father.[2] See id. § 665(b)(2)-(3). Accordingly, the court concluded that, on balance, the child's best interests supported awarding father sole legal and physical rights and responsibilities, with substantial parent-child contact for mother.

¶ 4.     The court's parent-child contact schedule left the existing schedule, established by the interim order, in effect. That is, the child was to be with father over the weekends—from Friday to Sunday evening, or until Monday morning in alternate weeks. The order included additional provisions for holidays and birthdays. Under this schedule, mother had approximately 64% of overnights with the child, and father approximately 36%.

_____

[2] The child has some special medical needs.

2

¶ 5. Father filed a motion for reconsideration. He argued that because the court granted him primary physical rights and responsibilities, it was legally required to grant him 50% or more of parenting time. The trial court, quoting <u>Chase v. Bowen</u>, 2008 VT 12, ¶ 42, 183 Vt. 187, 945 A.2d 901, reasoned that "physical custody is <u>not</u> simply about the time a child spends with a parent." In the trial court's view, "physical responsibility" as described in 15 V.S.A. § 664(1)(B) also refers to "primacy in decision making regarding routine daily matters." It reiterated its findings that maintaining the existing schedule was in the child's best interests, based on the parents' work schedules and the child's interest in consistency. The court did make some minor modifications to the parenting schedule regarding holidays, but otherwise left the schedule intact.

¶ 6. On appeal, father argues that the court's parent-child contact order essentially amounted to an award of physical rights and responsibilities to mother, despite the court's award of physical rights and responsibilities to father. He contends that the court's establishment of a schedule pursuant to which the child resides primarily with mother impermissibly infringes on father's right to exercise primary physical rights and responsibilities. Father asks this Court to remand to the trial court to establish a parent-child contact schedule that affords mother parent-child contact that is less than or equal to father's time with the child.

¶ 7. The trial court has broad discretion in allocating parental rights and responsibilities and in setting a parent-child contact schedule. <u>MacCormack v. MacCormack</u>, 2015 VT 64, ¶¶ 4, 26, 199 Vt. 233, 123 A.3d 383. We review these discretionary rulings for abuse of discretion. <u>Lee v. Ogilbee</u>, 2018 VT 96, ¶ 9, __ Vt. __, 198 A.3d 1277. We review the legal question of whether the trial court's order is internally inconsistent as a matter of law without deference. See <u>Engel v. Engel</u>, 2012 VT 101, ¶ 13, 193 Vt. 19, 71 A.3d 1124 (reviewing legal question under 15 V.S.A. § 665 anew, without deference). We substantially agree with father as to the error in the trial court's analysis, but part ways with respect to the proper remedy.

## I. The Relationship Between Physical Rights and Responsibilities and the Child's Living Arrangements

¶ 8. We agree that the court's award of physical rights and responsibilities to father implies that the child will spend at least fifty percent of the time with father, and that the trial court's order awarding father primary physical rights and responsibilities but mother nearly two-thirds of the time with the child is thus internally inconsistent. We base this conclusion on several considerations. First, the language, structure, and history of the relevant statutes support the conclusion that the parent with physical responsibility is the parent with whom the child lives at least fifty percent of the time. Second, this Court has consistently recognized that the parent entrusted with physical rights and responsibilities has the authority to determine where the child lives. Third, a contrary interpretation would render the concept of "physical responsibility" meaningless. Finally, the trial court's use of the term "parental rights and responsibilities" could give rise to confusion and incongruous outcomes where other statutory schemes assign significance to a parent's custodial status.

¶ 9. The trial court is correct that the statutory definitions of physical rights and responsibilities and parent-child contact do not expressly mandate that the child reside with the parent awarded primary physical rights and responsibilities for any particular amount of time. But implicit in the language, structure, and history of the relevant statutes, and this Court's general understanding of them, is that the child resides with the parent entrusted with physical rights and responsibilities at least half the time.

¶ 10. The structure of our parental-responsibilities statute is based on the premise that the parent with primary physical responsibility will live with the child at least half the time. The overarching category of "parental rights and responsibilities" comprises "the rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and

4

upbringing." 15 V.S.A. § 664(1) (emphasis added).  This category of rights and responsibilities is broken into two components.  "Legal responsibility" involves major decisions affecting the child's welfare and upbringing, such as "education, medical and dental care, religion and travel arrangements."  Id. § 664(1)(A).[3]  " 'Physical responsibility' means the rights and responsibilities to provide routine daily care and control of the child subject to the right of the other parent to have contact with the child."  Id. § 664(1)(B).  Unless parents agree to share physical rights and responsibilities, the court must entrust these rights and responsibilities "primarily or solely to one parent."  Id. § 665(a).  It is hard to imagine how one parent could effectively be the primary or sole person providing routine daily care and control for a child if the child is living more than half of the time with the other parent.

¶ 11.    The definition of "parent-child contact" reinforces this understanding.  " 'Parent child contact' means the right of a parent who does not have physical responsibility to have visitation with the child."  Id. § 664(2) (emphasis added).  The court does not provide for parent-child contact for the parent who has physical rights and responsibilities; rather, the definition presumes that the parent who does not live with the child the majority of the time is the one exercising the opportunity for visitation.

¶ 12.    The history of the term "parental rights and responsibilities" also suggests that primary physical responsibility includes a majority of parenting time.  "The phrase 'parental rights and responsibilities' in 15 V.S.A. § 665 replaced the word 'custody' contained in an earlier version of the statute."  Lane v. Schenck, 158 Vt. 489, 495, 614 A.2d 786, 789 (1992).  This change in language reflected an important rhetorical shift: the Legislature "discarded the word custody

---

[3] We see no inconsistency in the award of legal rights and responsibilities to father and the parent-child contact schedule, and confine our analysis here to whether the court's award of physical rights and responsibilities and its parent-child contact schedule are inconsistent.  See Chase v. Bowen, 2008 VT 12, ¶ 41, 183 Vt. 187, 945 A.2d 901 (holding that statutes authorized court to assign physical rights and responsibilities to one parent and legal rights and responsibilities to the other because the respective categories vest authority regarding different areas of parenting).

because the term implied that the child was a prize to be awarded to the most meritorious parent." Id. (quoting Note, A Critical Look at Vermont's New Child Custody Law, 11 Vt. L. Rev. 671, 671 n.3 (1986) (quotation marks omitted)). But it did not transform the practical application of the statute. In fact, we have continued to use the word "custody" as "shorthand" for parental rights and responsibilities. Id. And we have treated the phrase "physical custody" as interchangeable with "physical rights and responsibilities." See, e.g., Wright v. Kemp, 2019 VT 11, ¶ 20, __ Vt. __, 207 A.3d 1021; Weaver v. Weaver, 2018 VT 56, ¶ 1, 207 Vt. 564, 191 A.3d 978; Chase, 2008 VT 12, ¶¶ 16-21.

¶ 13.    Accordingly, we have repeatedly recognized that "the physical custodian has a right to determine the children's residence." Hawkes v. Spence, 2005 VT 57, ¶ 9, 178 Vt. 161, 878 A.2d 273; see also Quinones v. Bouffard, 2017 VT 103, ¶ 24, 206 Vt. 66, 179 A.3d 173 (noting that parent with physical rights and responsibilities has authority to decide where parent and child will live together); deBeaumont v. Goodrich, 162 Vt. 91, 97, 644 A.2d 843, 847 (1994) ("[T]he physical custodian has a right to determine the child's residence . . . ."); Lane, 158 Vt. at 495, 614 A.2d at 789 ("The place of residence for a family is central to childrearing, and thus that decision is understandably entrusted to the parent awarded parental rights and responsibilities."). Moreover, our discussions of physical rights and responsibilities reflect an assumption that physical responsibility for a child is synonymous with living with a child. See, e.g., Gates v. Gates, 168 Vt. 64, 68, 716 A.2d 794, 797 (1998) (contrasting impact of modifying legal rights and responsibilities with "violent dislocation realized by a change in physical custody").

¶ 14.    Given this case law, it is difficult to discern what an award of physical rights and responsibilities to father even means in this case, where mother has the lion's share of the time with the child. The trial court's explanation that father is still the custodial parent and retains authority regarding the child's daily care and control, even while the child is in the physical care of his mother, misapprehends the extent of a custodial parent's authority to make routine, day-to-

6

day decisions when a child is in the care of the noncustodial parent. A parent exercising parent-child contact is "entrusted the routine daily care and control of the children." Gazo v. Gazo, 166 Vt. 434, 445, 697 A.2d 342, 348 (1997). During parent-child contact time, a noncustodial parent can generally make decisions concerning the activities that will occur during parent-child contact time, sign releases or waivers, or arrange travel for the child. Patnode v. Urette, 2017 VT 107, ¶¶ 12, 14, 206 Vt. 212, 179 A.3d 1242. Parents generally cannot place limits or exercise control over each other's parenting time, even if one has primary responsibility for the child. Gazo, 166 Vt. at 446, 697 A.2d at 348-49. "If the custodial parent were allowed to establish routines and restrictions within a noncustodial parent's time at her whim, the contact with [the noncustodial parent] would be little more than a babysitting function with [the custodial parent] having filled the time with instructions and conditions." Miller v. Smith, 2009 VT 120, ¶ 7, 187 Vt. 574, 989 A.2d 537 (mem).

¶ 15. We have acknowledged that the trial court can deviate from these presumptions in appropriate cases. See id. ¶ 7 ("There are certainly times when the parent awarded parental rights and responsibilities will want to establish conditions, such as where the child has a strict vegetarian diet . . . ."). But it is generally not true that a parent with primary physical responsibilities can exercise routine daily care and control of the child while the child is with the other parent, and the trial court here did not suggest any intent to depart from this general rule by assigning father authority over the child's activities while in mother's care. For that reason, even though the trial court purported to assign physical rights and responsibilities to father in this case, the practical effect of its parent-child contact order is to leave father with a label that has little to no actual meaning.[4]

---

[4] Our holding in Chase v. Bowen, relied upon by the trial court, does not require a contrary conclusion. 2008 VT 12. In that case, a mother challenged a trial court order awarding her sole physical rights and responsibilities but awarding the father contact with the parties' two children fifty percent of the time. We rejected the argument that by dividing the children's time equally

7

¶ 16.    To permit an inconsistent order like the one in this case could lead to confusion or incongruities where other legal rights or obligations are tied to a parent's status as custodial or noncustodial.  For the purposes of child support, mother would be the child's custodial parent, even though the court nominally assigned father physical rights and responsibilities.  See 15 V.S.A. § 657(d).[5]    Likewise, although the court entrusted father with primary physical rights and responsibilities, mother would be considered the custodial parent for federal and state tax purposes. See 26 U.S.C. § 24(a), (c) (permitting credit only for "qualifying child"); id. § 152(c)(1)(B) (defining "qualifying child" as residing with taxpayer for more than half the year); 32 V.S.A. §§ 5822(d)(1), 5828c (applying same standards for Vermont purposes).

¶ 17.    Similarly, in Child in Need of Services (CHINS) proceedings custodial and noncustodial parents have very different rights.  See, e.g., 33 V.S.A. § 5302(a) (custodial parent, but not noncustodial parent, has right to immediate notification if an officer takes child into custody); id. § 5306(a)-(b) (requiring delivery of temporary order to custodial parent, but only "reasonable efforts to locate" noncustodial parent); id. § 5307 (assigning different rights to custodial and noncustodial parents who do not receive notice of temporary care hearing); id. § 5311(a) (requiring judicial summons for preliminary hearing for custodial parent, but only "reasonably diligent efforts to serve a noncustodial parent").  The definition of "custodial parent" for CHINS proceedings "means a parent who, at the time of the commencement of the juvenile

---

between the parents the trial court ran afoul of the statute precluding the court from imposing shared physical rights and responsibilities without the parties' agreement.  Id. ¶ 42 (applying 15 V.S.A. § 665(a)); see also MacCormack, 2015 VT 64, ¶ 28 (upholding parent-child contact schedule that allocated fifty percent of child's time to noncustodial parent).  Our decision in Chase does not support the trial court's conclusion that a court can allocate more than half of the parenting time to a noncustodial parent.

[5]  We recognize that in cases in which parents share physical rights and responsibilities, only one of them may be considered the custodial parent for child support purposes depending on the allocation of the child's time between the parents.  But to designate one parent as the child's sole custodian for child support purposes and the other one sole custodian for other purposes would create further confusion in the meaning of "custodial parent."

proceeding, has the right and responsibility to provide the routine daily care and control of the child." Id. § 5102(7). It is not at all clear how this definition would apply in a case where the child spends more time living with the "noncustodial" parent. It is also unclear whether giving effect to father's nominal "custodial" parent's legal status would be consistent with the purposes of the differential treatment in the CHINS statute.

¶ 18. For the above reasons, we conclude that the trial court's order in this case cannot stand because its assignment of parental rights and responsibilities and its parent-child contact order are incompatible.[6] An award of sole or primary physical rights and responsibilities to one parent generally means, at a minimum, that that parent is responsible for the day-to-day care of the child at least half the time.[7]

## II. Mandate

¶ 19. Father argues that because he appealed only the parent-child contact schedule, and not the court's assignment of parental rights and responsibilities, the only issue preserved for resolution on remand is the parent-child contact schedule. He further contends that based on the trial court's unappealed analysis of the best-interests factors, he is the proper custodial parent, leaving only the question of mother's parent-child contact.

---

[6] This case involves the assignment of parental rights and responsibilities in the first instance. We note that in the context of a motion to modify, a motion to increase a non-custodial parent's parent-child contact time to more than 50% of the child's time would likewise be tantamount to a motion to modify physical rights and responsibilities, even if captioned as a motion to modify parent-child contact. The movant's burden to establish changed circumstances to support such a change would accordingly be that required to modify physical rights and responsibilities. See Weaver, 2018 VT 38, ¶ 18 (" 'The burden of showing changed circumstances with respect to a motion to alter parent-child contact is not as high as the heavy burden of showing changed circumstances with respect to a motion seeking a change of custody.' " (quoting Hawkes, 2005 VT 57, ¶ 20)).

[7] We can imagine cases in which a child does not physically live with the custodial parent 50% of the time—such as a child who is in boarding school or who lives in an institutional setting. But in this case there are no such factors supporting a departure from the general presumption that the parent with physical rights and responsibilities is the one a child lives with at least half the time.

¶ 20. We disagree. In reconsidering its order on remand, the trial court may consider both its assignment of physical rights and responsibilities and its parent-child contact schedule. The trial court concluded that the child's best interests supported awarding primary physical rights to father, but also that the child's best interests supported awarding mother the majority of parenting time (having the effect of an award of primary physical rights). Given our clarification of the law, we cannot discern how the trial court would exercise its discretion in this case—that is, whether the court would revise its parent-child contact schedule or its award of physical rights and responsibilities in light of our conclusion that these disparate aspects of the court's final order cannot both stand as is. If the court were to name mother as the primary-physical-responsibilities-holder, the court would have to explain what factors weighed in mother's favor and why it gave more weight to those factors. See Nickerson v. Nickerson, 158 Vt. 85, 89, 605 A.2d 1331, 1333 (1992) (statutory list of best-interests factors is "nonexhaustive"). But we cannot deny the trial court the ability to reconsider physical responsibilities, given that it must fashion a new parenting plan.[8]

¶ 21. The trial court must grant parental rights and responsibilities "primarily or solely" to one parent. 15 V.S.A. § 665(a). The court's order in this case purported to grant father primary physical responsibilities, but its division of parenting time in mother's favor rendered father's physical responsibility virtually meaningless. We remand to the trial court to resolve this inconsistency in light of this opinion. In doing so, it may exercise its "broad discretion to craft

---

[8] This case is very different procedurally from those cases in which we have considered whether a trial court could properly revisit established parental rights and responsibilities in the context of a motion to modify an existing parent-child contact schedule. Compare Bonk v. Bonk, 2018 VT 15, ¶¶ 1, 14, 206 Vt. 522, 183 A.3d 600 (holding that trial court abused discretion in modifying parental rights and responsibilities in response to mother's motion to modify parent-child contact where mother's relocation would not impair the other parent's ability to exercise parent-child contact) with Chase, 2008 VT 12, ¶ 20 (holding that trial court did not abuse its discretion in awarding father sole legal custody in proceeding on mother's motion to modify where mother's motion to modify put existing shared custody arrangement in issue and father requested award of sole custody at hearing).

parental rights and responsibilities orders that serve the best interests of children." <u>Shea v. Metcalf</u>,

167 Vt. 494, 499, 712 A.2d 887, 890 (1998) (quotation omitted).

<u>The final order of the family division is vacated, and the case is remanded for further proceedings consistent with this opinion. The temporary order approved by the court on December 20, 2017, is reinstated until further order of the family division</u>.


FOR THE COURT:


_____

Associate Justice

11